1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CANAL STREET FILMS, INC.,

        Plaintiff,

     v.

DOES 1 - 104

        Defendants.

Case No.  C13-0007RSM-RSL

ORDER OF DISMISSAL

This action was filed on January 3, 2013.  Each of the Doe defendants is identified only by an IP address linked to the on-line sharing of the movie "Scary or Die." Plaintiff asserts copyright infringement claims against each Doe defendant.  On February 26, 2013, the Court granted plaintiff's motion to initiate early discovery from internet service providers in order to obtain information sufficient to identify the owner of each IP address.  None of the defendants was timely served (see Fed. R. Civ. P. 4(m)), nor has plaintiff amended its complaint to identify any of the Doe defendants.

After the matter had been pending for four months and the Court had heard from a number of putative defendants, the Court issued an order to show cause acknowledging concerns regarding the propriety of joinder and the possibility that plaintiff was using the judicial authority of the United States to wrest improvident settlements from *pro se* litigants under threat of huge statutory penalties.  The Court stayed the above-captioned matter and required plaintiff to provide copies of all written

1  communications with the owners of the IP addresses, summaries of all oral

2  communications with those individuals, proof of Canal Street Films, Inc.'s, ownership of

3  the copyright at issue, and the identification of all members/owners/stakeholders of Canal

4  Street Films, Inc.  In addition, the Court ordered plaintiff to show cause why the case

5  should not be dismissed for improper joinder and/or for failure to timely serve.  Having

6  reviewed plaintiff's response, the Court finds as follows:

7  **A.  Joinder**

8  Federal Rule of Civil Procedure 20(a)(2) imposes two specific requirements

9  for the permissive joinder of defendants.  First, the right to relief against defendants must

10  arise out of "the same transaction, occurrence, or series of transactions or occurrences."

11  Fed. R. Civ. P. 20(a)(2)(A).  Second, there must be some question of law or fact common

12  to all defendants. Fed. R. Civ. P. 20(a)(2)(B).  Taking the well-pled factual allegations of

13  the complaint as true and considering the declarations of plaintiff's investigator, the Court

14  finds that these requirements are met.  Plaintiff's investigator found that a user of each of

15  the IP addresses identified in the action possessed a pirated copy of "Scary or Die," that

16  each copy was a reproduction of the same original, and that the user offered for download

17  a portion of its pirated copy at some point between 6:44 am on September 12, 2012, and

18  1:54 pm on December 11, 2012.  Although there is no indication that plaintiff's

19  investigator actually downloaded portions of the movie from the users related to the IP

20  addresses in this action, plaintiff alleges that each defendant has in fact distributed

21  portions of the copyrighted original to other users of the BitTorrent protocol.  The Court

22  finds that defendants' knowing participation in an on-line media distribution swarm, the

23  purpose of which is to distribute copies of a single original and which actually resulted in

24  such distribution, is a series of transactions or occurrences that justifies joinder under

25  Rule 20(a)(2)(A).

26  The Court further finds that litigating this case will involve common

ORDER OF DISMISSAL - 2

1   questions of fact and/or law regarding the existence of the swarm, plaintiff's ownership of

2   the copyright, and the elements of infringement.  The fact that persons associated with the

3   IP addresses may have individual defenses to plaintiff's claims does not change the fact

4   that there will be some common question of law or fact:  not all of the legal and factual

5   issues must be identical as to all defendants.  <u>Patrick Collins, Inc. v. Does 1-21</u>, 282

6   F.R.D. 161, 168 (E.D. Mich. 2012).

7        Although the specific requirements of Rule 20 are met, the Court must also

8   determine whether permissive joinder will "comport with the principles of fundamental

9   fairness."  <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1296 (9th Cir. 2000).  Factors

10  relevant to this determination include the possible prejudice to any party, delay caused by

11  joinder, the motives for joinder, the closeness of the relationship between the joined

12  parties, notice to the parties, and the effect of joinder on jurisdictional issues.  <u>Desert

13  Empire Bank v. Ins. Co. of N. Am.</u>, 623 F.2d 1371, 1375 (9th Cir. 1980).  In the Ninth

14  Circuit, "[w]e start with the premise that Rule 20 . . . is to be construed liberally in order

15  to promote trial convenience and to expedite the final determination of disputes, thereby

16  preventing multiple lawsuits."  <u>League to Save Lake Tahoe v. Tahoe Reg'l Planning

17  Agency</u>, 558 F.2d 914, 916-17 (9th Cir. 1977).

18       Jointly litigating the facts related to the swarm plaintiff has identified and

19  the legal issues related to infringement is more efficient for plaintiff and the Court than

20  litigating 104 separate suits involving only one IP address each.  In addition, the nature of

21  the swarm and the BitTorrent protocol, with its many pieces and multiple sources,

22  suggests that joint litigation may be necessary for plaintiff to show that defendants acted

23  in concert to distribute copyrighted material and that infringement actually occurred even

24  if a segment downloaded from a particular defendant, considered alone, might not contain

25  copyrighted material.  Defendants, on the other hand, gain no appreciable advantage

26  through individual litigation:  in either case, defendants will be able to offer individual

1  defenses to the allegations.  Nor does there appear to be any significant risk of liability by

2  association.[1]  Jointly litigating these claims also allows defendants, many of whom will

3  undoubtedly proceed *pro se*, to pool resources, rely on arguments raised by other

4  defendants, and/or benefit from the participation of retained counsel.  The only potential

5  advantage to severance appears to be the hope that plaintiff will give up its claims, no

6  matter how meritorious, in the face of mounting costs.  If, as the Court is willing to

7  assume at this stage in the proceeding, plaintiff's allegations are true and its copyright has

8  been infringed, such a result is neither just nor fair.

9          The Court further finds that there is no indication that joinder will impact

10  the Court's subject matter jurisdiction and that defendants' alleged participation in a

11  knowing and intentional file-sharing scheme constitutes interrelated acts justifying joint

12  litigation even if defendants remained unaware of the identity of their fellow BitTorrent

13  users.

14          The Court is, however, concerned about the impact that joinder has already

15  had on the handling of this litigation and how that handling reflects on plaintiff's motives

16  for amassing a large group of defendants.  To be clear, the Court finds that joinder under

17  Rule 20 for purposes of prosecuting copyright infringement claims against members of a

18  swarm in a single lawsuit can be appropriate.  Plaintiff, however, was not actually

19  prosecuting this action as required by the Federal Rules of Civil Procedure.  Despite

20  receiving identifying information regarding some of the individuals associated with the IP

21  addresses at issue, plaintiff failed to affect service, asserting that complications in

22  obtaining subscriber information regarding every IP address somehow prevented it from

23  naming any individual defendants.  This approach to litigation has caused delay and raises

24

25          [1] Contra Voltage Pictures, LLC v. Does 1-12, No. 2:13-292-AA, 2013 WL 1900597 (D. Or. May
26  4, 2013) (finding availability of statutory damages and potential that unintentional infringers could be
    prejudiced by being sued along with original seeder and/or serial infringers precludes joinder).

ORDER OF DISMISSAL - 4

1     all sorts of potential for abuse, as discussed more fully below. In addition, the failure to

2     prosecute the actions suggests that the motive for joinder is not to promote the underlying

3     goals of efficiency, justice, and expeditious resolution of the disputes, but rather to use

4     the pendency of this litigation to obtain unilateral discovery regarding non-parties and to

5     push for quick (and potentially unjustified) settlements.

6           In the circumstances of this litigation, the Court finds that joint litigation

7     against numerous participants in a single swarm satisfies the specific requirements of

8     Rule 20(a)(2) but that, as utilized by plaintiff, the joinder actually retarded the litigation

9     and does not comport with the principles of fundamental fairness.

10     **B. Lack of Service**

11           Pursuant to Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 120

12     days after the complaint is filed, the court – on motion or on its own after notice to the

13     plaintiff – must dismiss the action without prejudice against that defendant or order that

14     service be made within a specified time." The complaint was filed in the above-captioned

15     matter on January 3, 2013. No proofs of service were filed during the subsequent 120

16     days. Instead, plaintiff filed a "Notice Regarding Status of Service of Complaint," simply

17     restating the need for discovery regarding the identity of the individuals associated with

18     the IP addresses and asserting that plaintiff "has been working with the ISP companies" to

19     obtain the necessary information. Dkt. # 9. A week later, the Court ordered plaintiff to

20     show cause why the case should not be dismissed for failure to timely serve.

21           Plaintiff argues that, following the authorization of early discovery, it has

22     diligently pursued discovery from the ISPs and was taking the additional step of

23     contacting those persons who had been identified in order to ensure that they are proper

24     parties. No evidence is submitted regarding plaintiff's efforts. The Court's order

25     authorizing preliminary discovery set forth a procedure that should have resulted in the

26     disclosure of subscriber information or receipt of an objection within forty-five days.

1  Plaintiff acknowledges that, by the time this matter was stayed, all ISPs other than
2  Comcast had responded to the subpoena.  On the existing record, it is impossible to
3  conclude that plaintiff acted diligently in seeking and pursuing discovery in these matters
4  or that good cause existed for the failure to comply with the 120-day service deadline.

5          Just as importantly, plaintiff offers no justification for its failure to timely
6  serve the defendants who have been identified.  Plaintiff opted to leave those individuals
7  in limbo, knowing of this litigation but not yet a party.  Predictably, individuals who
8  received notice of the lawsuit from their ISP began calling plaintiff's counsel as early as
9  March 26, 2013.  Plaintiff apparently responded with an explanation of the lawsuit, the
10  basis for identifying a particular IP address, and a reminder that the subscriber had a right
11  to object to the subpoena.  In addition, plaintiff sent demand letters to a handful of
12  defendants in this case shortly before it was stayed.  The demand letter and the attached
13  Copyright Settlement Agreement are more fair, equitable, and balanced than the
14  Frequently Asked Questions and Settlement & Release Agreement utilized in a series of
15  similar copyright infringement actions filed in this district.  <u>See, e.g.</u>, <u>Riding Films, Inc. v.</u>
16  <u>Does 1-35</u>, C13-255RSM-RSL, Dkt. # 14.  Nevertheless, the documents are clearly
17  designed to obtain a quick settlement or force the subscriber to divulge information well
18  in excess of that authorized by the Court.  The offer of settlement remained good for only
19  a week (less than that if Certified Mail were delayed):  thereafter it would go up by $500
20  and become unavailable entirely in less than a month.  The demand letter highlights the
21  significant statutory penalties for the alleged conduct, describes a $675,000 jury verdict in
22  a copyright infringement action in the District of Massachusetts, implies that evidence of
23  IP address ownership is legally sufficient to establish copyright infringement, and invites
24  the subscriber prove his or her innocence in order to avoid litigation.

25          When plaintiff sought permission to conduct discovery in this case, it
26  represented the discovery as both limited and efficacious:  by subpoenaing subscriber

1   identification information from the ISPs, plaintiff would be able to pursue these lawsuits

2   and protect its copyrights.  It turns out, however, that identifying the account holder tells

3   us very little about who actually downloaded "Scary or Die" using that IP address.  As

4   one court noted, "it is no more likely that the subscriber to an IP address carried out a

5   particular computer function . . . than to say an individual who pays the telephone bill

6   made a specific telephone call."  In re BitTorrent Adult Film Copyright Infringement

7   Cases, 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012).  In fact, it is less likely.  Home

8   wireless networks are ubiquitous, meaning that a single IP address can simultaneously

9   support multiple computer devices throughout the home and, if not secured, additional

10  devices operated by neighbors or passersby.  Thus, the risk of false positives is very real.

11  Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 243 (S.D.N.Y. 2012).  It is not clear that

12  plaintiff could, consistent with its obligations under Fed. R. Civ. P. 11, make factual

13  contentions regarding an internet subscriber's infringing activities based solely on the fact

14  that he or she pays the internet bill.  Plaintiff seems to be aware of this problem and has

15  refrained from identifying the Doe defendants more specifically even after it learns the

16  name of the subscriber.  Plaintiff did not, however, take the appropriate steps of returning

17  to the Court to seek an extension of time in which to serve and permission to conduct

18  additional discovery.  Rather, plaintiff demands that the subscriber prove he or she did not

19  download "Scary or Die."  Therein lies the rub.  Plaintiff has effectively obtained access

20  to unrepresented individuals and parleyed that access into open-ended and unlimited

21  discovery, despite the very narrow discovery order entered by the Court and the

22  limitations imposed by the Federal Rules of Civil Procedure.

23          In this context, the 120-day service deadline is the only thing that limits

24  plaintiff's unsanctioned discovery expedition.  If plaintiff feels it has enough information

25  to satisfy its Rule 11 requirements by simply identifying the subscriber associated with an

26  IP address, it should serve the complaint and initiate litigation subject to the limitations

imposed by the rules of civil procedure.  If, on the other hand, plaintiff would have trouble justifying a factual contention that the internet subscriber must, by virtue of that fact, be the downloader, it should seek an extension of the service deadline by explaining why it was unable to obtain the information in a timely manner and identifying steps to be taken that would allow litigation to begin.  If those steps include additional discovery, further permission of the Court would be necessary.  In short, plaintiff must actually prosecute the claims it has asserted.  Instead, plaintiff's litigation strategy seems to be to use the mere pendency of this action to create a period of time in which it can scare subscribers into settlement as the only means of avoiding both litigation costs and harsh statutory penalties.  Coupled with the clear implication that evidence of IP address ownership is legally sufficient to establish copyright infringement and the demand that the subscriber prove his or her innocence, it is not surprising that subscribers – whether guilty or not – may choose to settle.  While the risk of improvident settlements and overreaching cannot be eradicated, the Court will not allow plaintiff to pick and choose the procedural rules it likes while ignoring deadlines and discovery limitations.  Absent extraordinary and unforeseeable circumstances, the service deadline will be strictly enforced in order to reduce the risk of overreaching.

    For all of the foregoing reasons, the above-captioned matter is DISMISSED for improper joinder and failure to timely serve.  The Court need not reach issues regarding ownership of the copyright.

    Dated this 7th day of August, 2013.

    _MPS Lasnik_
    Robert S. Lasnik
    United States District Judge

ORDER OF DISMISSAL - 8